IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MICHAEL L. FRANTZ and
CRYSTAL L. FRANTZ,

        Plaintiffs,

v.                //   CIVIL ACTION NO. 1:15CV181
                                (Judge Keeley)

ACE HARDWARE CORPORATION,
and A.D. NAYLOR & CO., INC.,

        Defendants.

MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT ACE'S MOTION TO DISMISS [DKT. NO. 15]

Pending before the Court is the motion to dismiss filed by the defendant, Ace Hardware Corporation (Dkt. No. 15). The questions presented are (1) whether the Court may consider the extrinsic evidence attached to Ace's motion to dismiss; and (2) whether the complaint filed by the plaintiffs, Michael and Crystal Frantz, alleges sufficient facts to establish an agency relationship between Ace and defendant A.D. Naylor & Co. For the following reasons, the Court **DENIES** Ace's motion to dismiss the complaint (Dkt. No. 15).

**I. BACKGROUND**

**A. Factual Background**

As it must, the Court construes the following facts in the light most favorable to the non-movants. Papasan v. Allain, 478 U.S. 265, 286 (1986). The plaintiffs, Michael and Crystal Frantz

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT ACE'S MOTION TO DISMISS [DKT. NO. 15]

("Mr. and Mrs. Frantz"), filed this lawsuit against the defendants, Ace Hardware Corporation ("Ace") and A.D. Naylor & Co., Inc. ("Naylor") (collectively, "the defendants"), alleging (1) negligence; (2) breach of the implied warranties of merchantability and fitness for a particular purpose; and (3) strict liability for failure to warn (Dkt. No. 9-4).

Ace is an Illinois corporation that operates a retailer-owned hardware cooperative of over 4,000 member stores across the United States and Canada. Id. at 1-2. It is branded with the national slogan, "The Helpful Place"; previously, its brand was "The Helpful Hardware Place," and "Ace is the place with the helpful hardware folks." Id. at 2. Naylor is a Maryland corporation and a member of Ace's retail cooperative. Id. As a member of the cooperative, Naylor owns and operates Naylor's Ace Hardware stores at three branch locations in Maryland and West Virginia. Id.

The Frantzes allege that, in exchange for the various services received through membership in the retail cooperative,[1] Ace requires its members, including Naylor, to abide by various standardized policies, procedures, and guidelines. Id. The Frantzes further allege that Ace's standardized policies include

---

[1] Member stores receive, for instance, enhanced purchasing power on behalf of the cooperative (Dkt. No. 9-4 at 2).

those pertaining to its "equipment leasing program, participated in by many of its member[s]," including Naylor.  Id.

On August 13, 2013, Mr. Frantz called Naylor's Ace Hardware store in Oakland, Maryland, to inquire about suitable drain-cleaning equipment for his home septic system.  Id. at 4.  A Naylor sales associate confirmed that the store had the equipment Mr. Frantz needed.  Id.  Later that day, Mr. Frantz drove to the Naylor store and, upon his arrival, referenced his earlier call and reiterated the problem with his septic system.  Id.  A sales associate then presented Mr. Frantz with "the most powerful Easy Rooter available."  Id.  An Easy Rooter is a machine intended for clearing roots and other obstructions in the drain lines of septic tanks and other plumbing-related facilities.  Id. at 4-5.

Mr. Frantz and Naylor entered into a verbal agreement for the lease of the Easy Rooter.  Id. at 5.  At the time, Naylor did not inquire about whether Mr. Frantz had any experience using the Easy Rooter (he did not); nor did Naylor provide Mr. Frantz with any written or verbal instructions, manuals, or warnings regarding the proper use and operation of the Easy Rooter.  Id.

Upon returning to his home in Preston County, West Virginia, Mr. Frantz plugged the Easy Rooter into an electrical outlet in his garage and created slack by withdrawing several feet of the

machines's 100-foot long metal cable.  Id.  He then knelt down to insert the cable into his clogged septic tank drain pipe.  Id.  As the head of the cable entered the pipe and made contact with the water, Mr. Frantz received a severe shock.  Id.  Unbeknownst to him, the outlet in his garage was not properly grounded, and the Easy Rooter did not have a safety device to prevent a shock when faulty wiring was present.  It also displayed no warning of the possibility of such a shock due to faulty grounding.  Id. at 6.

As Mrs. Frantz observed her husband being shocked, she rushed to his side, intending to pull him away from the Easy Rooter.  Id. at 5.  As she attempted to do so, she too received an electrical shock, causing her arm to go numb.  Id. at 6.

Mr. Frantz was transported via helicopter to Ruby Memorial Hospital in Morgantown, West Virginia, where he remained from August 30, 2013, to September 1, 2013.  Id.  As a result of the electrical shock, he suffered severe, permanent, and debilitating injuries, including neurological trauma, burns, scarring, and disfigurement.  He continues to suffer from seizures, dizziness, and severe headaches.  Id.  Mrs. Frantz also suffered injuries, including burns, severe emotional distress, and loss of consortium. Id. at 7.

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT ACE'S MOTION TO DISMISS [DKT. NO. 15]**

**B.    Procedural Background**

On August 7, 2015, the Frantzes filed suit in the Circuit Court of Preston County, West Virginia (Dkt. No. 9-4). With the consent of Ace, Naylor removed the case to this Court on October 15, 2015 (Dkt. No. 1), alleging original jurisdiction under 28 U.S.C. § 1332(a) based on diversity of citizenship. Id. at 6. The Frantzes are citizens of West Virginia and reside in Preston County, West Virginia (Dkt. No. 9-4 at 1). Ace is an Illinois corporation with its principal place of business in Illinois (Dkt. No. 1 at 3). Naylor is a Maryland corporation with its principal place of business in Maryland. Id. The Frantzes' complaint includes claims for compensatory damages, punitive damages, and attorneys' fees in excess of the jurisdictional threshold of $75,000.00. Id. at 6.

Following removal, on December 11, 2015, Ace moved to dismiss the Frantzes' complaint for failure to state a claim upon which relief can be granted (Dkt. No. 15). The Frantzes predicate their claims against Ace on the allegation that Naylor is the agent of Ace in the operation of its hardware business and equipment leasing program. Ace argues that no such agency relationship exists and that the claims against it therefore must be dismissed (Dkt. No. 16 at 9-10). The Frantzes contend that they have alleged a plausible

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT ACE'S MOTION TO DISMISS [DKT. NO. 15]**

agency relationship between Ace and Naylor and, as such, dismissal on the ground asserted by Ace is inappropriate in the absence of any discovery (Dkt. No. 23 at 10). The motion is fully briefed and ripe for disposition.

## II.  LEGAL STANDARD

In reviewing the sufficiency of a complaint, a district court "'must accept as true all of the factual allegations contained in the complaint.'" Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). While a complaint does not need detailed factual allegations, however, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Indeed, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. at 286.

In considering whether the facts alleged are sufficient, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 (quoting Twombly, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT ACE'S MOTION TO DISMISS [DKT. NO. 15]**

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). This requires "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u>

### III. ANALYSIS

**A.    Extrinsic Evidence**

Attached to Ace's motion to dismiss is a confidential membership agreement ("Membership Agreement") between Naylor and Ace (Dkt. No. 17), which Ace contends defines the legal relationship between the Naylor and it (Dkt. No. 16 at 5-6). Specifically, Ace claims in its motion that the Membership Agreement clearly establishes that "no agency, partnership, or similar relationship exists" between Ace and Naylor, and, thus, Ace has no liability for the Frantzes' claims, which, to the extent they relate to Ace, are predicated upon the existence of such an agency relationship (Dkt. No. 16 at 9). The Membership Agreement was not attached to the Frantzes' complaint; nor was it attached to Naylor's answer. Thus, as a threshold matter, the Court must determine whether it may consider the Membership Agreement when analyzing Ace's motion to dismiss.

Federal Rule of Civil Procedure 12(d) states:

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT ACE'S MOTION TO DISMISS [DKT. NO. 15]

> If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Accordingly, when courts choose to consider evidence outside the pleadings on motions to dismiss pursuant to Rule 12(b)(6), these motions are generally converted to motions for summary judgment. Attaching a document to a motion to dismiss, however, does not automatically convert it to a motion for summary judgment. Rather, the motion may become one for summary judgment if and when the Court chooses to consider those extrinsic documents. See, e.g., Finley Lines Joint Protective Bd. Unit 200, Bhd. Ry. Carmen v. Norfolk S. Corp., 109 F.3d 993, 995-96 (4th Cir. 1997).

The Fourth Circuit has adopted an exception to the general rule that extrinsic documents should not be examined at the Rule 12(b)(6) dismissal stage. See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (quoting Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999)). Under the so-called Trigon exception, a court may consider a document that the defendant attaches to its motion to dismiss if the document "was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity."

MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT ACE'S MOTION TO DISMISS [DKT. NO. 15]

Id.  Therefore, if a court finds that an extrinsic document was "integral to and relied on in forming the complaint" (and the opposing party does not dispute its authenticity), such evidence may be considered without conversion to a motion for summary judgment. See id. at 234-35.

The Court must assess whether, as Ace argues, the Membership Agreement attached to its motion to dismiss meets the Trigon exception for the consideration of evidence outside the pleadings. The Frantzes acknowledge the Trigon exception, but argue that "[p]laintiffs were unaware that the Membership Agreement even existed at the time the Complaint was filed." (Dkt. No. 23 at 7). Because they "lacked actual notice" of the Membership Agreement, the Frantzes argue that it was not "integral to and explicitly relied on in the complaint" and should thus be excluded from consideration at this stage.  Id.

Ace maintains that the Membership Agreement satisfies the Trigon exception and therefore should be considered by the Court (Dkt. No. 26 at 4).  Citing the Frantzes' allegations that Naylor is a member of Ace's retail cooperative of member hardware stores, that Naylor was the agent of Ace in the operation of its hardware store, including its equipment leasing program, and that Naylor is required to abide by various standardized policies and procedures

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT ACE'S MOTION TO DISMISS [DKT. NO. 15]**

of Ace, Ace contends that the allegations contained in the complaint establish that the Frantzes "have a great deal of knowledge as it relates to business relations . . . of a national company and its member," and that "this knowledge of anticipated obligations . . . between a national company and its member was integral to and explicitly relied on" in the Frantzes' complaint (Dkt. No. 26 at 4-5).

Neither the Frantzes nor Ace challenge the authenticity of the Membership Agreement (Dkt. No. 26 at 5). Hence, the relevant questions are whether the Membership Agreement is integral to the Frantzes' complaint, and whether they relied on it in forming their allegations. The Fourth Circuit has not explicitly decided whether actual notice to the plaintiff is required to meet the Trigon exception for consideration of extrinsic evidence. It has, however, commented on the function of actual notice to the plaintiff in the context of the exception:

> "The rationale underlying this exception is that the
> primary problem raised by looking to documents outside
> the complaint-lack of notice to the plaintiff-is
> dissipated "[w]here plaintiff has actual notice . . . and
> has relied upon these documents in framing the
> complaint."

Trigon, 367 F.3d at 234 (quoting In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997)). This

rationale supports the Frantzes' contention that without "actual notice" of the Membership Agreement, they did not (and could not have) "relied upon" it in "framing the complaint." <u>Id.</u>  Other federal courts agree.  <u>See, e.g.</u>, <u>Cortec Industries, Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 48 (2d Cir. 1991) (holding that "where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint," the reviewing court can considering the documents on a motion to dismiss).

The complaint itself supports the Frantzes' contention that they did not rely upon the Membership Agreement to frame the complaint.  Notably, their basic negligence, breach of implied warranties, and strict liability claims do not rely on the contents of the Membership Agreement.  The complaint does not quote or describe the contents of the Membership Agreement.  In fact, it does not explicitly reference the Membership Agreement or, for that matter, any other written agreement between Ace and Naylor.  <u>Cf.</u> <u>Blankenship v. Manchin</u>, 471 F.3d 523, 526 (4th Cir. 2006) (finding a newspaper article attached to the defendant's motion to dismiss "integral to" the complaint and "explicitly relied on" by the plaintiff where he quoted from the article in his complaint); <u>Zimmeck v. Marshall Univ. Bd. of Governors</u>, No. 3:13-14743, 2014 WL

108668, at *5 (S.D.W. Va. Jan. 10, 2014) (finding a university policy "integral to" the complaint and "explicitly relied on" by the plaintiff where it was "clear" that she had repeatedly referred to the policy in her amended complaint). Rather, the complaint simply states that, as a member of Ace's retail cooperative, "Naylor[] was the agent of the Defendant Ace Hardware in the operation of its hardware business" and that "upon further information and belief, Naylor[] is required to abide by and follow various standardized policies, procedures, and guidelines of Ace Hardware." (Dkt. No. 9-4 at 4-5). Such allegations about the nature of the relationship between Ace and Naylor are not obviously or apparently based on the contents of the Membership Agreement.

Furthermore, although Ace argues that the Frantzes were "aware that an explicit agreement existed" between Ace and Naylor (Dkt. No. 26 at 5), it also claims that the Frantzes' complaint was "drafted with the **anticipation** that an explicit agreement" existed between Ace and Naylor, perhaps conceding that the Frantzes did not explicitly rely on the Membership Agreement in forming their complaint. Id. (emphasis added).

Based on these considerations, the Court cannot conclude that the Membership Agreement is integral to the Frantzes' complaint, or that the Frantzes relied on the Agreement in forming their

## MEMORANDUM OPINION AND ORDER
### DENYING DEFENDANT ACE'S MOTION TO DISMISS [DKT. NO. 15]

complaint.  The Membership Agreement therefore fails to meets the
Trigon exception, and the Court will not consider it in its
analysis of Ace's motion to dismiss.

**B.    Alleged Agency Relationship**

As mentioned, the Frantzes' claims against Ace are predicated
upon the existence of an agency relationship between the
defendants, such that liability for the actions of the agent,
Naylor, may be applied vicariously to the principal, Ace.  In its
motion, Ace challenges the adequacy of the alleged facts supporting
the necessary agency relationship between it and Naylor.  It argues
that the Frantzes' complaint contains "mere naked assertions"
regarding the existence of such a relationship (Dkt. No. 16 at 9-
10).

Under West Virginia law, an agent is defined "in the
restricted and proper sense" as "a representative of his principal
in business or contractual relations with third persons." Syl. Pt.
2, in part, State ex rel. Key v. Bond, 94 W. Va. 255, 118 S.E. 276
(1923).  Specifically, an agency relationship exists where one
party (the principal) grants express or implied authority to
another party (the agent) to represent the principal in dealings
with third persons, creating a fiduciary relationship between the

MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT ACE'S MOTION TO DISMISS [DKT. NO. 15]

parties.  State ex rel. Clark v. Blue Cross Blue Shield of W. Va.,
Inc., 203 W. Va. 690, 714, 510 S.E.2d 764, 788 (1998).

An "essential element[] of an agency relationship is the
existence of some degree of control by the principal over the
conduct and activities of the agent."  Syl. Pt. 5, Paxton v.
Crabtree, 184 W. Va. 237, 400 S.E.2d 245 (1990).  "Proof of an
express contract of agency is not essential" to the establishment
of the relationship.  General Elec. Credit Corp. v. Fields, 148 W.
Va. 176, 181, 133 S.E.2d 780, 783 (1963).  Rather, agency "may be
inferred from facts and circumstances," and the "underlying conduct
of the parties can be reviewed" to determine whether an agency
relationship exists.  Harper v. Jackson Hewitt, Inc., 227 W. Va.
142, 155-56, 706 S.E.2d 63, 76-77 (2010) (citing Restatement
(Third) of Agency § 1.02 ("[T]he existence of an agency
relationship is determined on the actual practices of the parties,
and not merely by reference to a written agreement.").  Whether or
not an agency relationship exists depends upon the facts of each
case.  Harper, 227 W. Va. at 155, 706 S.E.2d at 75.

West Virginia law also recognizes the principle of apparent
authority, or "apparent agency."  Apparent agency involves a case
in which there may be no agency in fact, but where

## MEMORANDUM OPINION AND ORDER
### DENYING DEFENDANT ACE'S MOTION TO DISMISS [DKT. NO. 15]

one who by his acts or conduct has permitted another to
act apparently or ostensibly as his agent, to the injury
of a third person who has dealt with the apparent or
ostensible agent in good faith and in the exercise of
reasonable prudence, is estopped to deny the agency
relationship.

Syl. Pt. 1, <u>General Elec. Credit Corp. v. Fields</u>, 148 W. Va. 176,

133 S.E.2d 780 (1963).  <u>See also</u> Syl. Pt. 8, <u>Brewer v. Appalachian</u>

<u>Constructors, Inc.</u>, 138 W. Va. 437, 76 S.E.2d 916 (1953) ("[W]here

the principal or employer holds out or represents a person to be

his agent or employee, and a third party or parties rely thereon .

. . the person making the representation is estopped to deny the

agency.").

Ace argues that the claims against it, all of which are based

on an alleged agency relationship between Ace and Naylor, must fail

because the Frantzes have alleged only "naked assertions" about the

degree of control Ace exercised over Naylor (Dkt. No. 16 at 9-10).

The Court disagrees.

The facts pleaded in the complaint are sufficient to indicate

the existence of an agency relationship in this case.  In relevant

part, the Frantzes allege the following:

> 3. Ace Hardware is, and was at all times relevant
> hereto, engaged in the business of operating a retail
> cooperative of over 4,000 member hardware stores . . .
> . **Ace Hardware does business** . . . directly and **through
> the members of its cooperative**.

MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT ACE'S MOTION TO DISMISS [DKT. NO. 15]

5. **Defendant Naylor's is a member of the Defendant Ace Hardware's retail cooperative**, and, upon information and belief, is the recipient of various services provided by its retail cooperative head, Ace Hardware . . . and, upon further information and belief, **Naylor's is required to abide by and follow various standardized policies, procedures, and guidelines of Ace Hardware, including those pertaining to the Ace Hardware's equipment leasing program, participated in by many of its member stores, including Ace's member hardware store, Naylor's.**

6. Naylor's owns and operates Naylor's Ace Hardware stores . . . where it sells and **leases various hardware products**, including but not limited to: mechanical and electrical equipment, including a product known as an "Easy Rooter" . . . .

9. When the Easy Rooter is used in **an equipment leasing program, such as employed by the defendant Ace Hardware, and implemented through its member stores, such as Defendant Naylor's** . . . .

(Dkt. No. 9-4 at 2-3)(emphasis added).

Throughout their complaint, the Frantzes repeatedly allege that the defendants operate a joint, or "combined," equipment leasing program, which is "employed by" Ace and "implemented through" Ace's member stores, including Naylor (Dkt. No. 9-4 at 2-3, 7). They also allege that Ace is responsible for providing Naylor with proper instructional, operational, and safety materials and information regarding the equipment in the leasing program (Dkt. No. 9-4 at 7). These factual allegations constitute more

than "naked assertions" or mere bare recitations of the elements of agency; rather, they sufficiently allege that Ace exercised the requisite control over the conduct of Naylor to establish an agency relationship.

Additionally, although the precise nature of the relationship between Ace and Naylor may not be entirely clear to the Frantzes at this early stage of litigation, "sorting out [that] relationship, as necessary for this litigation, is a factual matter that may be resolved by summary judgment following discovery, not by Rule 12(b)(6)." Pinnacle Mining Co., LLC v. Bluestone Coal Corp., No. 5:08-CV-00931, 2009 WL 1543867, at *2 (S.D.W. Va. May 29, 2009). Accordingly, the Frantzes are entitled to conduct discovery regarding the control, if any, Ace exercised over the conduct and activities of Naylor.

The Frantzes' complaint provides "enough facts to state a claim to relief that is plausible on its face" even without the allegations regarding Ace's control over Naylor's conduct. Twombly, 550 U.S. at 547. Although control is a necessary element of agency, factual allegations explicitly demonstrating such control are not necessary for the Frantzes' agency claim to survive Ace's motion to dismiss. See Perry v. Tri-State Chrysler Jeep, LLC, No. 3:08-0104, 2008 WL 1780938, at *3 (S.D.W. Va. Apr. 16,

17

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT ACE'S MOTION TO DISMISS [DKT. NO. 15]**

2008). A claim of agency relationship between Ace and Naylor is "simply not the kind of claim, implausible on its own, which requires the support of factual pleading." <u>Id.</u> Naylor is a member of Ace's retail cooperative of hardware stores. Naylor is authorized to use the name of Ace in its own business ("Naylor's Ace Hardware"). Naylor purchases merchandise through the Ace retail cooperative and then sells it to consumers in its "Naylor Ace Hardware" stores. One thus can infer a contractual relationship between Ace and Naylor, and "it is not implausible that the applicable contract describes a principal-agent relationship." <u>See id.</u> Accordingly, the Frantzes have alleged sufficient facts regarding the existence of an agency relationship to survive Ace's motion to dismiss.

## IV. CONCLUSION

For the reasons discussed, the Court **DENIES** Ace's motion to dismiss the complaint (Dkt. No. 15).

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record.

DATED:  March 22, 2016.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE